Good morning, your honors. Todd Burns on behalf of the appellant, Mr. Martinez. I intend to focus my remarks on the jury selection and speedy trial issues, unless the court has questions on any of the other issues. Beginning with the jury selection issue, there are really two components to this, two major components. One is the failure for the court to conduct or to allow sufficient voir dire so that Mr. Martinez could adequately exercise his peremptory and forecaused challenges. The other is the district court's failure to dismiss a jury who specifically raised his hand indicating that he would have a problem following the law. Can I ask you this? There were a number of jurors that fell into this group initially, right? About six and four were excused? That's correct. All right. Explain to me when you're obviously challenging how the court handled that, wouldn't your argument be stronger if the court had not excused any of those individuals, but it appears that the court did make some sort of sorting out between these six people? Well, I would think that if there was something in the record that would reflect differences amongst those people, that might be the case, what Your Honor suggested might be the case. But here there's actually What about not answering and being able to look at the people, you know, see all of the expressions in terms of, you know, I mean, trial courts do what they do because they're there. We do what we do because we're not there. And that, I mean, aren't you asking, you know, obviously there was some exercise of discretion with these six people here. There were some questions and the juror that you're questioning that ended up sitting on the jury. There, you know, certainly by initially indicates a problem, but then there's other questions talking about, well, if I tell you this is what the law is, would you be willing to follow it? And this juror doesn't tend to, doesn't continue to have a problem as it were by being silent and the expressions isn't, you know, don't we have to give some deference to a trial court that is sifting through six people, gets rid of four, asks additional follow-up questions? Well, I think that I mean, they didn't do it, the judge didn't do it the way you wanted the judge to do it, clearly, but There are a number of answers I could give to that. First, I'd like to point out that, of course, I don't know everything that was going through the trial judge's mind, but for me to effectively make my record and to figure that out and the court to review, the trial court has some obligation when there is doubt, when there is a lingering issue, when someone has raised a hand, either allow me to follow up on that or to follow up himself so that this court knows what was going on in that juror's mind and to make some sort of informed decision. And that wasn't done. I was actually told to sit down at the end of my ten minutes when I tried to follow up further. I was only given ten minutes. I asked for the court to ask questions because I knew that the ten minutes wasn't going to be enough and this was going to be a very important issue in this case, whether or not these jurors would follow the law. And the trial court didn't do any of that. And I'd point out the one thing that we know is that, you know, some of the people on the floor were people that actually spoke during the ten-minute group voir dire. And you could say, well, they actually spoke, so there's some difference between them and the people who just raised their hand. But there is one person in the floor that was struck who was just a hand raiser, Mr. Owen. And Mr. Rounds, the person who wasn't struck and made it on the jury, was just a hand raiser as well. And I think Ms. Newport, who was one of the two that wasn't struck, she made a view that it was just a hand raiser as well. So from everything, from all we can tell, all we can see, Mr. Owen and Mr. Rounds are similarly, exactly situated the same. And that shows me that there was some discretion in observing these individuals and seeing their expressions and the type of things that we do give deference to a trial court in doing. Well, I think, first of all, as I said, that there's some obligation to follow up when this person has raised their hand and raised a serious concern that he's not going to follow the law, to let me follow up or for the court to follow up to draw that out, rather than just looking at his expression and saying, well, he's raising his hand, but I don't think he really means it. Because raising your hand is a pretty overt expression of bias. And just for the trial court to just look at that person and say, well, I don't think he really means it because of his expression, I think is a real leap. And it's not fair to the defendant as far as making the record and pursuing things and relieving any doubt. And of course, the doubt, if there's any doubt here, it's resolved towards excusing the person. Well, but what lawyers commonly like to do, I mean, having been in the trial courts for a long time and having been a lawyer in there, is, well, are you going to have any problem with the fact that my client was drunk and I'm going to ask you to let my client go because of that? And so people say, well, yeah, I might have a problem. And then the court comes back and says, well, if I tell you, say, that intoxication is something that you can consider as part of the intent, and I'm telling you that's what the law is, are you going to follow the law? I mean, lawyers like to state it in one way, and then the court comes back and says, you know, there's a different authority when judges talk to the jury than there is when the lawyers put that out. And anyone that doesn't, you know, anyone that doesn't know that means they haven't been in a courtroom. Well, a few things. The judge didn't follow up with them individually and say that. And the judge also didn't say, indicate in any way that I had misstated the law. The court followed up with them as a group? Yes, and interestingly, how the court followed up with them as a group, I believe, is probably, I think it's at 131, is to say, not to say, I'm going to state this differently than defense counsel, not to say defense counsel misstated this. The district court specifically said, defense counsel has been careful to tell you this is something you can consider, and it is something you can consider, et cetera, et cetera. Is there anyone other than the people who have already so indicated, other than the hand raisers, who are going to have a problem following that law? So what the district courts seem to be accepting is, look, the hand raisers have disqualified themselves, so I'm not following up with them. What I'm doing is asking the rest of the panel if there's anyone else that agrees with that position. And that's somewhat consistent with the point at which the district court sat me down, which is when I was saying, is there anyone else? Is there anyone else? Because, again, I was taking notes at a room full of people trying to find out who exactly had their hands up. District court told me to sit down, said he would inquire further, said exactly what I just said. Is there anyone other than those that so indicated who have a problem with that? And then we have the government's rehabilitation, which was very brief and was just a general can you follow the laws, the court gives it to you, something of that nature. And it was very obvious that the jurors were confused because, as a matter of fact, a couple of the people who had a problem with that didn't raise their hands and didn't acknowledge it because they had already so indicated. They didn't raise their hands until specifically asked by the prosecutor. And it's interesting. The prosecutor had 10 minutes here. I think his entire allotment of time takes up three pages of the transcript. Didn't use the 10 minutes. Didn't specifically go back to those people and say, you know, do you really have a problem with this? Could you follow the law anyway? Didn't specifically ask any questions about that. The best we're left with here is a strong doubt as to Mr. Rounds' position, something that wasn't cleared up by the district court and something that wasn't cleared up by the prosecutor. And any doubt has to go towards excusing this person. Well, track this through. You started out during the four-hour deer raising a number of objections. Then later on you raised the issue again. When did you raise the issue again? At the end of the trial? I'm sorry. I'm not understanding your question, Judge. When did you raise the adequacy of the four-hour deer and the ability of the juror to sit after you raised it during the four-hour deer itself? You raised it again when? I initially filed proposed questions before trial. Before four-hour deer, I specifically said to Judge Jones, I'd like to ask these questions because of the time limits you put upon me and because it's very important. At sidebar, I noted that I wanted people to raise their hands, those specific people that I wanted them to excuse for cause. The judge declined that partially on two people. When that was done, I said, objection noted. We then, we may have had a few witnesses that day and then the next... You lost, then there was a trial? Yes. And when did you bring up the four-hour deer issue again? I brought it up the next morning because I wanted to make clear to the judge that one of those people had been seated. There may have been a witness or two heard in the interim there, but that was just to make it clear for the record in case there was any problem later. I know that the peremptory sheets, for example, and the jury sheets don't go into the record for some reason. You'll notice I attached the peremptory sheet to my reply brief here. What I'm getting at is the, who's Ms. Verdugo? She's one of the prosecutors or two prosecutors. She says the record showed that in fact all the jurors were given at least four or five opportunities to present any type of question or bias that they may have had in this particular case. I think the record speaks for itself and the record presents no bias. Mr. Burns, I'm reading from the record, the court, but you are speculating as to what happened after that, sir. In any event, the court's recollection differs. I'm going to deny it. If you come up with an additional record, Mr. Burns, I will reconsider it. Other than that, in approximately four weeks, we'll have the sentencing. That's the beautiful thing about a transcript. We don't have to speculate. If, as I've indicated, if you can show me the context, then the court will reconsider your motion. Did you bring something to the attention of the court after that nationalization? Yes. And what happened? Yes. And what, what the situation was there is I, in trying to conserve the government's resources and not spend more money than I had to, had only ordered my portion of the voir dire when I questioned the jurors. I hadn't, I hadn't ordered the government's, the government's portion. So what, what the court That's an excessive zeal to protect the government's purse. Well, I didn't, I, as I said to the district court, the rehabilitation was perfunctory. It was, can you, can you follow the laws as the government gives it to you? And, and two of the people were confused about that rehabilitation. The court, half the law from the court said, my recollection differs. If you want to get the transcript and bring the rest of it back to me, please go ahead. Yes. And that's Did you do that? Yes, I did. And what happened then? He denied the motion. And his, and the basis for his denial was that he felt that the government rehabilitated the jurors. And it's one question in which it said, and I think this is at 133 probably of the excerpt in which it basically asks them, it's at the top of page 134. Is there anybody in here who would not be able to put aside their daily experiences for the duration of this trial and apply the facts that you will hear from the witnesses who would take the stand of the law that Judge Jones will provide to you at the end of the trial? No response. And then interestingly, Mr. Kaplan, the other prosecutor says That includes the juror that you're now complaining about? Yes. So it seems to be that under that question, the juror says, I'm fine. But interestingly, and I've indicated this in my brief, he then goes on to say, and this is at 134, so Ms. Aragon Mills and Ms. Kalish, two of the six jurors, you wouldn't be able to do that. Is that what I understand? And they both say yes, because they haven't understood that he's just, that he's asking them the specific question I asked before. They both, they don't raise their hands, but they do still object to applying this law. And he never follows up with rounds or any of the other ones. I think simply they're not raising their hands again, because number one, he hasn't asked the specific question. And number two, they've already raised their hands. They've already indicated, I have a problem with this. The judge then asks them, is there anyone else other than the people that raised their hands? And then right after that, the prosecutor asks them a very general question. He doesn't ask the specific question, and they're confused about it. It's indicated by the fact that two of them don't raise their hand. And then, but then they verbally say, yes, I still do have a problem with that. They left the scene? Those two were excused. All right. Yes. What other points would you like to make? Your time is running. On the Speedy Trial Act issue, without reiterating everything that's in there, there's a bigger point which I didn't point out in addressing the statutory construction, which has dawned on me, which is Congress specifically Wait, time out. Are you telling us you're about to make a new argument you've never made before? Absolutely not. Okay. Congress Whatever it is just dawned on you? Well, it's the big picture. I was poking around so much at the little things, such as what for trial must mean. But if you think of the big picture, Congress has defined absence, and they've Did you make this argument before? It's totally inherent in my argument here. Oh, okay. They've defined You didn't make it before? Yes. So you aren't It's certainly preserved. I can't think of any. In fact, perhaps if I can finish, the Court will agree or disagree with me. Congress has defined absence, and they've defined unavailability in this subsection. And there is simply no reason that they would go to all that trouble of defining absence and unavailability if the distinction, which I am suggesting, does not apply here. That is, there is no reason to say absence and say it applies to someone who you can't find and to not limit it for trial, and to find unavailability and say it's someone you can find, but you can't get him there for whatever reasons. What caused the delay here? He was in detox and then in the hospital. They should have tried him when he was in detox in the hospital? No. The argument is that they should have indicted him because the statute specifically says that the delay for unavailability, that is, when you know someone, is an exclusion of time for trial, for the pretrial delay. It does not say for preindictment. And if you say that that applies to preindictment, it totally writes out the whole description of absence and unavailability. The only reason to define those two things differently is if this distinction that I'm talking about applies. Okay. So they should have indicted him in the hospital. Well, no. They should have indicted him in the grand jury room. But he wouldn't be there. He's never... I mean, so you're just saying they should have finished and even though they knew he was in the hospital. Yes. And I think that there's a very... First of all, it's clear that that's what Congress has intended by this language, but there's a very logical reason for that. Absence talks about someone that the government doesn't know where they are. Unavailability talks about someone that they know where they are, but they can't get them to proceedings or what they want in the situation of someone who's unavailable. So what you're saying is they're different. Yes. But doesn't or usually mean that that's more ways to catch everyone? Doesn't it make it more of a... It casts a wider net? No, I think or indicates in this context that they don't... All the exceptions don't apply to everyone. They apply to either this or that. And they can apply to both, depending on the wording. But the wording here, the specific wording, says absence and defines it as applying to both, and unavailability as applying just for trial. And again, there's a perfectly logical reason for that. If the government knows where the person is and has arrested them, because again, it's the arrest that triggers the 30 days running. They've arrested them previously, knows where they are. Congress, to vindicate the speedy trial reasons, could say, look, you know where they are. Once they become available to come to trial, we want you to get the pre-trial proceedings going. And there's no reason you've already arrested him. There's no reason you have to have him there to go to the grand jury. You've already arrested him. You think you have probable cause. Go to the grand jury. Get the indictment. When they become available, you know where they are. Bring them. Let's get things moving. With an absent defendant, there's no similar interest to vindicate, because you can't bring them there and get the pre-trial proceedings moving. There's nothing to get moving. The person's gone. So you wait until the person shows up, and then you get things moving. It's a perfectly logical setup. And it's... If you apply unavailability to... It's not whether it's logical. It's what they meant, though, right? Well, I... I mean, it's not whether it's your logic or my logic or whatever. It's what they meant by the words, correct? Well, I think the first thing that controls is the plain language. Right. And the plain language specifically says absence, and this is... I believe the pertinent subsection is on 43 of my opening brief. It says absence applies when someone's whereabouts are unknown and does not limit it to a four-trial situation. So that applies to pre-indictment delay and pre-trial delay. And then it says unavailability is when someone's whereabouts are known, but his presence for trial cannot be obtained by due diligence, or he resists appearing at or being returned for trial. There's a specific trial limitation to unavailability. So it applies to pre-trial delay. It doesn't apply to pre-indictment delay. And what I'm saying is that that's perfectly logical. Congress... In Mr. Martinez's arrest on May 15, a complaint was filed, and the defense counsel was appointed. Is that right? Yes. In the 22 days between May 15 and June 6, magistrate judges called Martinez's case six times, and each time found that Martinez was unavailable due to his hospitalization. Is that right? Yes. And all these other... They kept calling the case, calling the case, calling the case, calling the case. Finally, he showed up, and the defense asked for a couple of weeks' continuance in order to review everything. Is that right, too? Not at the first appearance. No, at the first appearance, it was set off 10 days for the preliminary examination. Right, but then it was set off for some period of time because defense counsel asked for 10 days to prepare the case. Yes, that was after the 30 days had expired. Okay. But Ramirez-Cortez makes clear that even a defense request for a continuance of the preliminary examination does not toll the speedy trial clock, and I think the Lloyd case makes clear as well that this can't be waived. There's a societal interest. Neither the government nor defendant can waive the speedy trial requirements. And furthermore, I'm sending the message that this is what the statute says, and making that clear to the district courts in a case like this will ensure that the district courts then do the right thing in the future and not exclude this time, because there's just no reason that they couldn't go get the indictment. There was no delay resulting from him being in the hospital. All they had to do was go get the indictment. That's what they did later. That's what they should have done in the first instance. Thank you, counsel. May it please the Court. I'm Roger Haynes, representing the United States in this matter. Let's first talk about Juror Rounds. Rounds and five other jurors raised their hands when defense counsel asked them if they were, quote, uncomfortable with that. And the question in this case is, what did that refer to? The question came after prospective juror Sperry had told defense counsel that he was uncomfortable with the claim that, quote, because Martinez was on drugs, he was going to be innocent. In response, defense counsel did not deny that this was his defense. He simply warned the rest of the jurors that some people aren't going to like following that law, and anyone who was uncomfortable with this should raise their hand. That's when they raised their hands. The judge saw people raising their hands saying, essentially, I won't follow that law. Or they're uncomfortable. Or they're uncomfortable with that. But the predicate for that was a paragraph earlier in which Sperry had defined for the jurors what they, what he thought at least the law was, and defense counsel didn't deny that was what they were going to be asked to do, basically to say, if you find my client is on drugs, you must acquit. So that's what the jurors were explaining that they were having trouble with. And as far as the government's concerned, frankly, we think the judge made a mistake and excused four jurors who were perfectly good jurors who simply said, and it was clear later on, another juror said, what are we here for? If that's what the point is, he's already admitted this client's on drugs, and Sperry has asked him, essentially, I have trouble with this. If he's on drugs, then we must find him and acquit him. The rest of the jurors are saying, what's the point? What's it all about? And that's what was never cleared up here. Now, the judge eventually, I think Judge Callahan, I have to support your view of this. The judge eventually said, what we're talking about is that that's one of the factors that can be considered. And at that point, you can sort of see the collective sigh of relief of the jurors saying, oh, of course, it's one of the factors. The judge is reassuring us. It's not some outlandish thing like defense counsel was trying to tell us that we're going to be uncomfortable acquitting somebody simply because they use drugs. They're reassured. The prosecutor then continues to reassure them, saying that's one of the factors you can consider. And at some point, they're reassured enough to where they don't raise their hand again. And that's really all this is about. Once you understand the context in which these questions were asked, it seems perfectly clear none of these jurors were biased against the defense. The defense never said, for instance, did any of you have a problem acquitting my defendant if you find that he was blacked out or if you find that he was so intoxicated on drugs that he couldn't form the specific intent to commit this crime? If that question had been asked, the jurors would not have had a problem. But the problem, the question they clearly did have a problem with is the one that Sperry repeatedly said twice. You're telling us that if we find he's on drugs, we must acquit? And they said, we have a problem with that. And that's all this case is about. Once we get past that, I think it's an easy case. Next point, what about the speedy trial problem? Just to start sort of at the end, as to whether or not the issue can be waived, I think Your Honor is correct. When you point out that for six times, defense counsel's office was in court and allowed the judge to say, this is excludable under the Speedy Trial Act. Defense counsel said nothing, did not preserve an objection at that time. It's true defense counsel cannot waive the Speedy Trial Act. But here he's waiving a judicial finding that this time is excludable under the act. And only later, after it's too late, does he bring that to the argument to the district court's attention and say, now I want to make this very unusual, strange Speedy Trial Act argument that I never made before, when the magistrate judge had made the findings. And frankly, I'm not even sure I can articulate the argument. But it's an argument that for 20 years, no lawyer has presented to any court that I'm aware of. And in fact, this Court has repeatedly said that the periods, the 30-day period from arrest to indictment and the 70-day period are both covered by the exemptions. That is to say, the exemptions apply to both periods. Defense counsel is finally for the first time ever trying to attach some meaning to the word or and to the word for trial. But the problem with his argument is that all of the exemptions under 3161H are mushed together. Many of them can apply to the 30-day period as well as to the 70-day period. And it really makes no sense for Congress to have intended a difference between those and yet threw into sort of one hat all of these various exceptions. I think his argument simply doesn't make sense. And I'm prepared to submit on that. Thank you, Mr. Haynes. We'll give you a minute to respond. The government's characterization of my point here is just simply inaccurate. And all you have to do is review pages 3 to 8 of my reply brief to indicate that. It's all set out there, what their argument is. What's the legal definition of uncomfortable? Well, regardless of what uncomfortable means, I said to them, are you uncomfortable with this? Is it something you simply want no part of? And the right thing to do would be raise your hand and ask to be excused. And that's on page, I think, 129. Not everyone's hand would go up. No one wants to be a juror. But I'm specifically asking them about that, about the voluntary intoxication defense. The district court believed that my statement of law was correct. As soon as I got done, the district court said, what Mr. Burns has been saying is that one of the things that you can consider in determining whether or not Mr. Martinez formed that specific intent was whether or not he was under the influence of drugs. That certainly is a factor you can consider. Mr. Burns has been very careful to point out that it is a factor that you must consider. So the question that Mr. Burns has put to you and the question that I will reiterate, the district court specifically endorsed what I said. There was no objection from government counsel during any of this that I was misstating the law. As a matter of fact, during the motions for a new trial, this issue was never raised. Arguably, it's waived. If they had raised it, the district court could have opined as to what the district court thought. Did I misstate the law? The district court didn't say anything like that because I wasn't misstating the law, and that's why they didn't object at the time. That's why there was no discussion of it. As far as me not specifically raising the blackout, I didn't know what instruction I was going to get. The instruction I got was hard fought for to get that, so I was hewing to the Ninth Circuit model and jury instruction as to voluntary intoxication. This is a factor you can consider. That's what I was asking about without the issue of what instruction I was going to get having been considered. Do you have any response on the speeding trial issue to what the government said? Well, I'm not sure exactly what the government said, other than they didn't understand my argument. Again, I think if you go to the statute. All right. If you're not sure what the government said? Well, I do have a – they said they didn't understand my argument. I think, again, if you look at the statute, absent is not limited to for trial. Unavailable. What about the point that your office appeared and appeared and appeared and appeared and allowed this to go by the boards and never said anything? Well, for starters, I don't know what the government is doing in the grand jury room. For all I know at that point, they're going and getting indictment. I have no way of knowing that. Secondly, again, it's something that can't – Ramirez-Cortez, the situation in which the defense counsel actually got up and asked for, I think, a six-week continuance of the preliminary examination, and the parties, everyone in the court, were under the understanding that that would toll the speedy trial clock. The court said that didn't matter. Arguably, that's invited error, not just a waiver. That's invited error. And the court in Ramirez-Cortez says that doesn't matter. This is a violation of the Speedy Trial Act. Societal interests are at play here. It's repeatedly been said, and it was said in the legislative history, which I cited, this can't be waived. The court's case law on this is absolutely clear. It can't be waived. But aside from that, really, when it comes down to it, it's the government's obligation to get the indictment in the time required. That this argument hasn't been made before, I guess, I don't know if that belittles the argument. The argument seems pretty obvious to me, but I guess, you know, I've just come up with something that was obvious that everyone has missed, so I should pat myself on the back. But unavailable says for trial. If you write that out, then all Congress needed to say here, rather than putting in all these definitions, is absent and unavailable, is just someone who's unavailable and just not defining. That would have. Your time has expired. We'll take the case under submission and call the last case, which is Verracce v. Gratia.
judges: Hall, Trott, Callahan